UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Jay Redford

     v.                                        Civil No. 19-cv-1152-LM
                                                    Opinion No. 2020 DNH 138
U.S. Department of Housing
and Urban Development, et al.


**O R D E R**


    Jay Redford brings this action against the Department of Housing and Urban Development ("HUD") and its subcontractors for injuries he sustained when he slipped and fell on an icy driveway at a property owned by HUD.  He alleges HUD is liable for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq.  The United States of America, on behalf of HUD,[1] moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  For the following reasons, the government's motion is granted.

---

[1] The United States of America is the proper party defendant in an action based on negligence filed under the FTCA.  Roman v. Townsend, 224 F.3d 24, 27 (1st Cir.2000).  A plaintiff may not litigate a negligence claim directly against HUD.  Sanchez Pinero v. Dep't of Hous. & Urban Dev., 592 F. Supp. 2d 233, 236 (D.P.R. 2008).

**BACKGROUND**

The following facts are taken from plaintiff's complaint or are otherwise undisputed.  In early 2017, HUD owned a single-family house located at 66 Spruce Road in Bethlehem, New Hampshire.  HUD had a contract with defendant BLM Companies, LLC ("BLM") pursuant to which BLM was responsible for maintaining HUD's property.  BLM subcontracted to defendant A-Son's Construction, Inc ("A-Son's") to remove snow and ice from the driveway.  A-Son's then subcontracted those duties to defendant Bruce Clarke.

On March 22, 2017, a potential buyer visited the HUD-owned property and her car became stuck in snow.  The potential buyer went to Redford's home at 54 Spruce Road and asked for a shovel. Redford lent her the shovel and accompanied her back to the HUD-owned property with a bucket of sand.  Redford and the potential buyer freed the vehicle from snow that had accumulated in the driveway.  Redford then slipped and fell on ice while walking down a snow-blown path on the side of the driveway.  He sustained severe injuries to his leg.

In August 2017, Redford submitted an Administrative Claim for his injuries to HUD.  HUD denied his claim in September 2019 and Redford filed the current action in November 2019.  Redford alleges that HUD is liable for negligence under the FTCA and that the non-government defendants (BLM, A-Son's, and Bruce

2

Clarke) are liable for negligence under New Hampshire state law.

The United States now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction because the United States did not waive sovereign immunity for the negligence of government contractors in the FTCA.

**LEGAL STANDARD**

1. Standard for motion to dismiss under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction.  See Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005).  Federal district courts may exercise jurisdiction over civil actions arising under federal law, see 28 U.S.C. § 1331 ("§ 1331"), and over certain actions in which the parties are of diverse citizenship and the amount in controversy exceeds $ 75,000, see 28 U.S.C. § 1332 ("§ 1332").

"It is a bedrock rule that a party seeking to invoke the jurisdiction of a federal court must bear the burden of demonstrating the existence of such jurisdiction." Gordo-Gonzalez v. United States, 873 F.3d 32, 35 (1st Cir. 2017). "The pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6)— that is, the plaintiff must state a claim to relief that is plausible on its face." Id. (internal quotation marks and

brackets omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  At the pleading stage, the court can grant a motion to dismiss only when the facts in the plaintiff's complaint "taken at face value, fail to bring the case within the court's subject-matter jurisdiction."  Gordo-Gonzalez, 873 F.3d at 35.

2. The Federal Torts Claim Act

The United States, as a sovereign, is immune from suit unless it has consented to be sued.  Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003).  Absent a waiver of sovereign immunity, "the federal courts lack subject matter jurisdiction over torts against the United States." Wood v. United States, 290 F.3d 29, 35 (1st Cir. 2002).  In general, statutes waiving sovereign immunity "should be strictly construed in favor of the United States." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

"[T]he FTCA . . . waives the sovereign immunity of the United States with respect to certain torts committed by federal employees acting within the scope of their employment." Gordo-Gonzalez, 873 F.3d at 35; see also 28 U.S.C. § 1346(b).  The FTCA gives federal courts jurisdiction over those claims.

However, the FTCA contains many exceptions to the governments'
waiver of sovereign immunity including an independent contractor
exception and a discretionary function exception.  See 28 U.S.C.
§ 2680 (a)-(n).  If any of these statutory exceptions applies,
the court lacks subject matter jurisdiction.  Gordo-Gonzalez,
873 F.3d at 35.  To survive a motion to dismiss, a complaint
must contain sufficient facts to demonstrate that the FTCA
applies and that none of the FTCA's "manifold exceptions" bar
the claims.  Id. at 35-36.  The independent contractor exception
and the discretionary function exception are particularly
relevant here.

Under the independent contractor exception, "[t]he FTCA
expressly does not waive the government's immunity for claims
arising from the acts or omissions of independent contractors."
Carroll v. United States, 661 F.3d 87, 93 (1st Cir. 2011)
(emphasis in original); see also United States v. Orleans, 425
U.S. 807, 814 (1976).  "The key factor governing whether an
entity providing services to the United States is an independent
contractor is whether the contractor, rather than the
government, exercises day-to-day supervision and control of its
own activities."  Carroll, 661 F.3d at 95.

Under the discretionary function exception the United
States does not waive sovereign immunity for any tort that
arises from "the exercise or performance or the failure to

exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." See 28 U.S.C. § 2680(a).

Because Redford's claims fall under either the independent contractor or the discretionary function exceptions, he has not met his burden of demonstrating that the court has subject matter jurisdiction.

**DISCUSSION**

1. Independent Contractor Exception

Redford first alleges the United States is liable under the FTCA because, under New Hampshire law, a landowner has a non-delegable duty to maintain property in a reasonably safe condition.[2]  Doc. nos. 29 at 17; 31 at 1.  However, "the FTCA bars recovery for injury where the United States has delegated its authority to an independent contractor notwithstanding otherwise applicable state law that makes such responsibilities nondelegable."  Hall v. U.S., Gen. Servs. Admin., 825 F. Supp.

---

[2] The court observes that Redford's complaint does not allege any duty that HUD owed to him other than its duty as a landowner.  Compare Edison v. United States, 822 F.3d 510, 518 (9th Cir. 2016) (holding the independent contractor exception did not bar prisoners' claims against the government where prisoners alleged the government was directly liable for failure to take action in response to a fungal epidemic at the prison and government had a separate and undelegated duty to protect prisoners from harm from that fungus).

427, 431 (D.N.H. 1993).  The fact that the United States government holds title to property "does not in any way undermine the [independent contractor] exception." Crippen v. Nelson Realty, 572 F. Supp. 87, 88 (E.D.N.Y. 1983).  Thus, even though HUD owned the property where Redford was injured, the United States cannot be held liable as landowner if it delegated its property maintenance duties to an independent contractor.

Here, Redford appears to concede that BLM was an independent contractor.  See doc. no. 31 at 4 (Redford refers to BLM as an independent contractor).  Moreover, analysis of the HUD-BLM contract establishes that BLM was an independent contractor with full responsibility for the maintenance of 66 Spruce Road.  The HUD-BLM contract provides:

> The Contractor [BLM] shall maintain properties in
> Ready to Show Condition. The Contractor shall be
> liable for damages to all acquired properties due to
> failure to inspect or maintain property in ready to
> show condition or secure property or other act,
> neglect, failure, or misconduct of the Contractor, a
> Subcontractor, or any Management Official of any of
> the foregoing. The Contractor shall indemnify HUD for
> losses due to any act, neglect, failure, or misconduct
> of the Contractor, a Subcontractor, or any Management
> Official of any of the foregoing…

Doc. nos. 11-1 (Declaration of Michael Curry) at ¶¶ 8, 13; 11-3 (HUD-BLM Contract) at § C.5.2.3 (Property Maintenance).  The HUD-BLM Contract defines "Ready to Show Condition" to mean: "Snow must be removed from driveways, walkways and porches." Doc. no. 11-3 at § C.2.2 (Definitions).  The HUD-BLM Contract

also provides that: "The Contractor shall take proper health and safety precautions to protect . . . the public . . . .  The Contractor is responsible for any and all injuries/damages to persons and/or property resulting from the Contractor's performance under this contract."  Id. at § H.7 (Additional Responsibilities).

In sum, there is nothing in the contract that suggests that the United States controlled the detailed physical performance of the HUD-BLM contract or supervised the day-to-day operations of BLM.  See Orleans, 425 U.S. at 814.  In every respect, BLM qualifies as an independent contractor.  Other courts considering similar claims based on similar facts have also reached this conclusion.  See e.g., Larsen v. Empresas El Yunque, Inc., 812 F.2d 14, 16 (1st Cir. 1986) (holding that the independent contractor defense applied where responsible party ran the "day-to-day operation of [a] restaurant" that was located on premises "owned and controlled by the United States"); Lopez v. United States, No. 1:15-CV-9695-GHW, 2016 WL 7156773, at *6 (S.D.N.Y. Dec. 7, 2016) (holding plaintiff could not bring a claim against United States after she slipped and fell on government property because government had not retained power to control the day-to-day physical performance of the contractor's work); Smith v. Steffens, 429 F. Supp. 2d 719, 721 (E.D. Pa. 2006) (concluding United States could not be held

8

liable for failure of a maintenance contractor to discover and correct a dangerous condition at a HUD-owned property); Harris v. United States, 424 F. Supp. 627, 629 (D. Mass. 1976) (holding the independent contractor exception of the FTCA meant HUD, as property owner, could not be held responsible for the negligent acts of its maintenance contractor).  Because BLM is an independent contractor, the government is immune from Redford's premises liability claim.

### 2.  Discretionary Function Exception

Although Redford's complaint does not assert a negligent supervision claim, he appears to argue in his objection that the United States is liable under a negligent supervision theory.[3] The United States counters that—even if properly asserted— Redford's negligent supervision theory cannot save his claim because it fails under the discretionary function exception to the FTCA.

---

[3] The court will assume for purposes of this order that the facts in Redford's pleadings make out a plausible negligent supervision claim and that such a claim would be actionable under the FTCA—a matter on which the court does not opine.  See Bolduc. v. United States, 402 F.3d 50, 60 (1st Cir. 2005) (assuming without deciding that the government could be held liable under a negligent supervision claim but dismissing under the discretionary function exception).

Under the discretionary function exception, the United
States does not waive sovereign immunity for any tort that
arises from "the exercise or performance or the failure to
exercise or perform a discretionary function or duty ... whether
or not the discretion involved be abused." Gordo-Gonzalez, 873
F.3d at 36.  Courts follow a "familiar analytic framework in
determining whether Congress intended to shield particular
conduct from liability under this exception." Id.  The court
first must identify the conduct giving rise to the claim.  Id.
Second, the court must determine whether that conduct "can
fairly be characterized as discretionary." Id.  Finally, the
court must determine "whether the exercise of discerned
discretion is susceptible to policy-related judgments." Id.
(internal quotation marks omitted).  The discretionary function
exception strips the court of subject-matter jurisdiction "only
if the challenged conduct is both discretionary and policy-
driven." Id.

Thus, the court must first identify the conduct giving rise
to the claim.  This is a difficult task as Redford's complaint
includes no facts or argument regarding the United States'
supervision of BLM.  However, Redford's objection and surreply
identifies the government conduct at issue as HUD's purported
failure to enforce a bi-weekly reporting requirement in the HUD-
BLM contract.  Although a plaintiff cannot amend a complaint

through matters raised only in an objection, see Cass v. Airgas USA, LLC, No. 17-CV-313-JD, 2018 WL 3682491, at *8 n.8 (D.N.H. Aug. 2, 2018), the court will consider whether the government's conduct falls within the discretionary function exception for the sake of argument and efficiency.

The court must consider whether "challenged conduct can fairly be said to be discretionary." Gordo-Gonzalez, 873 F.3d at 36. "In carving out the discretionary function exception, Congress wanted to prevent courts from second-guessing legislative and administrative decisionmaking." Fothergill v. United States, 566 F.3d 248, 253 (1st Cir. 2009). Therefore, the next step of the discretionary function exception analysis requires the court to determine "whether the identified conduct involves a matter that the political branches have left to the actor's choice." Id.

Redford argues that compliance with a property maintenance contract provision is not a discretionary function. However, he points to no federal statute, regulation, or policy that obligated HUD to require property management contractors to inspect properties, let alone on a bi-weekly basis. Redford also does not identify any federal statute, regulation, or policy that required HUD to take ongoing action to ensure that its contractors continually complied with contractual reporting terms. Cf. Sheridan v. United States, 487 U.S. 392, 401 (1988)

(concluding that where naval hospital had specific regulations prohibiting possession of firearms and requiring all personnel to report presence of firearms, United States could be held liable under FTCA when officers encountered armed man and failed to report him).  In the absence of such authority, the court concludes that the challenged conduct is discretionary.  See Gordo-Gonzalez, 873 F.3d at 36 (finding challenged conduct discretionary when plaintiff pointed to no federal statute, regulation, or policy that dictated government was required to take specific action).

Finally, the court must consider whether the discretionary conduct was grounded in policy.  See Bolduc, 402 F.3d at 62. "On that issue, the government benefits from the presumption that a supervisor's discretionary acts are grounded in policy." Id.  Plaintiff bears the burden to "rebut this presumption and demonstrate that particular discretionary conduct is not susceptible to policy-related judgments."  Id.  Here, Redford has wholly failed to carry his burden to show the discretionary conduct at issue is not susceptible to policy-related judgment; he makes no argument on this issue.  The First Circuit has consistently held that supervisory conduct is inherently discretionary because "inherent" to the "performance of supervisory tasks are considerations of policy, a balancing of competing interests, and careful decision making regarding the

12

level of micro-management of one's subordinates." Gordo-Gonzalez, 873 F.3d at 37; see also Attallah v. United States, 955 F.2d 776, 784 (1st Cir. 1992) (observing that "how, and to what extent [an agency] supervises its employees certainly involves a degree of discretion and policy considerations of the kind that Congress sought to protect through the discretionary function exception"). On this record, the court concludes HUD's discretionary conduct was grounded in policy.

If a plaintiff does not plead sufficient facts to show that "the challenged conduct did not involve a discretionary function, the plaintiff cannot lay claim to the FTCA's waiver of sovereign immunity." Gordo-Gonzalez, 873 F.3d at 37. Here, Redford's allegations fail to establish that HUD's supervision of BLM involved anything other than a discretionary function.

Accordingly, the court concludes that Redford has failed to meet his burden of establishing that the court has subject matter jurisdiction over his claim against the United States.


3. The Remaining State Law Claims

The court now considers, as it must, whether it has subject-matter jurisdiction over the remaining claims. See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction."). Redford's

claims against the remaining defendants were brought pursuant to the court's supplemental jurisdiction.  See 28 U.S.C. § 1367. But, "[w]hen a district court does not have subject-matter jurisdiction over federal claims, it cannot exercise supplemental jurisdiction over any state claims under 28 U.S.C. § 1367." Mains v. Citibank, N.A., 852 F.3d 669, 679 (7th Cir. 2017); see also Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) (same).  The court does not have subject-matter jurisdiction over Redford's federal claim against the United States.  Therefore, it appears as though the court cannot exercise supplemental jurisdiction over Redford's remaining claims.  However, since plaintiff has had no opportunity to address the existence of subject matter jurisdiction over the state law claims, the court will hold in abeyance its ruling on the question of whether it has subject matter jurisdiction over the supplemental state claims to give plaintiff an opportunity to respond.  To that end, plaintiff shall, on or before August 24, 2020, show cause why the court should not dismiss the entire case for lack of subject matter jurisdiction over the remaining state law claims.

14

**CONCLUSION**

For the foregoing reasons, the United States' motion to dismiss (doc. no. 11) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 10, 2020

cc: Counsel of Record.

15